THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MIKAL BOWMAN,  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>  )<br>ANTONY BLINKEN, in his official capacity  )<br>as Secretary of the U.S. Department of State,  )<br>    Defendant.  )<br>  ) | Civil Action No. 4:22-cv-02309<br><br>JURY DEMANDED |

**AMENDED COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff MIKAL BOWMAN, in the above numbered and entitled case, complains of ANTONY BLINKEN, SECRETARY OF THE UNITED STATES DEPARTMENT OF STATE (DOS). (Hereafter, "Defendant", "DOS" and/or "Agency"), Defendant in the above numbered and entitled case, and for cause(s) of action would respectfully show unto the Court and jury as follows:

**I. PARTIES**

1.      Plaintiff, MIKAL BOWMAN, a Caucasian Female, is a citizen of the United States, was employed as a Passport Specialist (GS-0967-11) for the Defendant at the Houston Passport Office of Defendant, during the time-period wherein the present of cause of action accrued. MIKAL BOWMAN was employed by the UNITED STATES DEPARTMENT OF STATE from on or about 2008 to on or about December 19, 2020.

MIKAL BOWMAN was a federal employee within the meaning of Section 504 of the Rehabilitation Act of 1973, Section 701(f) and Section 717(a) of Title VII of the Civil Rights Act

1

of 1964, 42 U.S.C. Sec. 2000e(f) and 16(a) and at all relevant times was a federal employee.

2.     Defendant ANTONY BLINKEN is the SECRETARY OF THE UNITED STATES DEPARTMENT OF STATE, which is an agency of the United States government. Defendant does business at the Harry S. Truman Building, 2201 C. Street, N.W. Washington D.C., 20520. Defendant ANTONY BLINKEN is sued in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF STATE, and as such, is amenable to suit as provided in Section701(f) and Section 717(a) of Title VII, 42 U.S.C. Sec. 2000e(f) and 16(a) and may be served by serving Secretary, ANTONY BLINKEN.

## II. JURISDICTION

3.     This action arises under Section 504 of the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, Section 701 *et. seq.*, as amended, 42 U.S.C.A. 2000e, *et. seq.*, 29 C.F.R. 1614 *et. seq.*, and 28 U.S.C. Section 1346.

4.     All of the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has filed timely complaints of disability discrimination, race discrimination, color discrimination, and retaliation with her federal employer, the U.S. Department of State, and brings her claims more than 180 days after she filed her formal complaints. Said complaints were given the following identifiers: "Agency No. DOS-0017-18 and EEOC No. 570-2019-01045X; Agency No. DOS-0212-19 and EEOC No. 460-2020-00093X; Agency No. DOS-0201-20 and EEOC NO. 570-2021- 01345X."

5.     Plaintiff filed a timely appeal (The EEOC Office of Federal Operations identified Plaintiff's Appeal as "Appeal No. 2021000882"), pursuant to 29 C.F.R. Sec. 1614.403(a), from the Defendant's September 21, 2020 final decision concerning Agency No. DOS-0017-18 and EEOC No. 570-2019-01045X; Agency No. DOS-0212-19 and EEOC No. 460-2020-00093X.

6. On or about April 14, 2022, the Defendant issued its Final Agency Decision for Agency No. DOS-0201-20 and EEOC NO. 570-2021- 01345X, regarding claims that are identified in this amended federal complaint.

7. On or about September 26, 2022, the Office of Federal Operations issued its decision on Appeal No. 2021000882, regarding claims that are identified in this amended federal complaint.

8. The Southern District of Texas is where the actions complained of in the present case took place and where the employment records relevant to the unlawful practices are kept.

9. The jurisdiction of the Court is invoked pursuant to 28 US.C. § 1343(a)(4), Section 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 2000E-5 (2012).

### III. VENUE

10. Venue is appropriate in this District pursuant to 28 U.S.C. §1391, 42 U.S.C. 2000e-5(f)(3), because the Defendant resides in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial district.

### IV. FACTS

11. Mikal (Caucasian/White) was a Passport Specialist (GS-0967-11) for the State Department's Houston Passport Office ("Agency", "DOS" or "Defendant"), during the time-period that is the subject matter of the present litigation.

12. The Agency Houston Passport Office, in the present matter, intentionally discriminates against White Passport Specialists. The Agency also engages in a pattern and practice, at the Houston Passport Office, of discriminating against White passport specialists and White employees as a whole. Mikal was subjected to a hostile work environment motivated by her race, color, disabilities and retaliation. Mikal is only one of a few, if any, White employees

3

who have opposed the discriminatory actions of the Agency and as a result has been the subject of retaliation. Most White employees are petrified of voicing their opposition of the Agency's discriminatory practices out of a genuine fear of retaliation.

13. The genesis of the hostilities against Mikal began in 2008 when she reported a physical assault by one of her Black female supervisors named Coretta Sextion. At that time and until this day, the large majority of members of management at the Houston Passport office are Black females. These same management officials continued to harass Mikal over a 12-year period, until her unlawful removal from federal employment.

14. Mikal went to work every day for approximately 12 years, knowing that no matter how she performs or presents herself, she will not be evaluated, formally and/or informally, in the same light as her minority co-workers, she will be disciplined for alleged infractions that her minority coworkers are not, she will not be afforded the same career enhancing opportunities as her minority coworkers, including but not limited to trainings, TDY's, quality step increases, commissions, award opportunities, cash awards, awards, assistance into other department jobs and bonuses and/or bonus programs. The Agency's actions in not affording Mikal the same opportunities as her minority coworkers has been extremely hostile and has had a crippling effect on her employment opportunities and reputation within the Agency and outside of the Agency.

15. Indeed, several of the Black management officials at the Houston Passport office literally hate non-Black persons, especially White persons. This is evidenced by the demographics of the Houston Passport office, which is over 80% Black and the unequal treatment of White employees compared to the Black employees. The Agency tacitly approves of the discriminatory actions by the Houston Passport Office towards non-Black employees by doing nothing to stop it.

16. Non-Black employees are in fear of retaliation if they speak out against the discrimination because they have seen how Mikal has been treated after complaining about discrimination. Mikal has been used by the Houston Passport Office as an example of what will happen to you if you dare complain about the race, color or disability discrimination. This has created a chilling effect, born from the fear of retaliation if they complain about anything relating to the actions of Black management officials or other Black employees at the Houston Passport Office. In fact, it so bad that some employees won't even associate or talk to Mikal out of fear that management will punish them for doing so. Thus making Mikal a pariah at the Houston Passport Office.

17. One of the most insidious tactics, of many tactics used repeatedly by management and some of Mikal's Black coworkers against Mikal, is every time Mikal complains about other Black employee's hostile behavior, those employees and management then file bogus unfounded complaints against Mikal. As an example, there is a group of Black passport specialists who talk very loudly, all day long. This type of behavior would not be tolerated in most offices. However, when Mikal complained that their loudness was having an effect on her disability those employees, with the support of management, filed a complaint against Mikal because she allegedly types to loud on her keyboard! Management and other Black employees have used this tactic against Mikal over and over again. The result is an obnoxious, extremely loud work environment where Black employees are allowed to talk loudly and watch TV shows on their computers while they are working, while at the same time Mikal is admonished for allegedly typing to loud.

18. During the course of her employment with Agency, Mikal has filed many EEO complaints based on her claims of discrimination motivated by her race, color, disabilities and

retaliation for her protected EEO activity.

19. Mikal began making reasonable accommodation requests for her disabilities on or about November 2011. Mikal continued the reasonable accommodation interactive process with the Agency until the Agency decided to cease the interactive process.

20. From 2011 forward Mikal made many reasonable accommodation requests to the Agency, most of which were denied even though the requested accommodations would have caused no undue hardship upon the Agency. At the same time management was denying Mikal's reasonable accommodations requests, it continued to allow her similarly situated Black coworkers to have their disabilities accommodated, many times without even having DRAD getting involved.

21. On or about September 4, 2017: Mikal continued to be denied reasonable accommodations; Mikal was denied a performance award, Mikal request for leave was denied; Management improperly disclosed Mikal's medical information, Mikal was assigned additional adjudicative duties; Mikal received a written counseling; Mikal was suspended. In addition, Mikal's requests for leave without pay (LWOP) were denied and she was charged with absence without leave (AWOL).

22. In addition to the above, Mikal was continuously subjected to a hostile work environment on the basis of her race, color, disability and retaliation by Defendant management officials, which included but was not limited to: Excessive monitoring/heightened scrutiny, delays in responding to her leave requests, intimidating and demeaning comments from management, belittling behavior from management, threats of termination from management and failure to cooperate with her security clearance investigation.

23. On or about December 23, 2019, Ms. Kim Davis (DRAD Analyst) emailed Mikal

and informed her that they were closing her accommodation request process. Ms. Davis informed Mikal that if she wished to appeal the decision to close her file, she could submit a request in writing to Director General (DG) Carol Perez by January 9, 2020. Ultimately, Mikal was granted an extension to file her appeal on or before February 18, 2020.

24. On or about February 18, 2020, Mikal timely filed her appeal of the Agency's December 23, 2019 decision to cease the reasonable accommodation process and close her file.

25. On or about April 29, 2020, Ms. Perez sent Mikal an email indicating that she was writing in response to Mikal's February 18, 2020 appeal of the Bureau of Global Talent Management, Office of Accessibility and Accommodations, Disability and Reasonable Accommodation Division's (GTM/OAA/DRAD) December 23, 2019 decision. Ms. Perez specified that she had considered the materials Mikal submitted in support of her appeal, including Mikal's narrative statement and attachments. Ms. Perez concluded that after careful consideration she had decided to uphold DRAD's decision.

26. Mikal also requested Weather and Safety Leave (WSL) on or about March 2020. WSL was being granted to employees with self-certified medical conditions due to COVID and the Agency ordered staff to go home and shut down. Repeatedly from March 2020 through December 18, 2020 (the date of Mikal's removal) Mikal was not accommodated and had to respond to emails and proposals regarding her removal. Ultimately, Mikal was denied WSL but some of her similarly situated Black coworkers were granted WSL.

27. Mikal was unlawfully removed from Federal Employment on December 19, 2020, motivated by her race, color, disabilities and in retaliation for her opposition to the Agency's unlawful actions that are the subject matter of this federal complaint.

28. Even after Bowman's removal on December 19, 2020, her medical insurance was

terminated because the Agency failed to provide information about COBRA medical coverage; her unemployment benefits were delayed because of Agency action; and Mikal was unable to make benefit decisions because the Department had not provided her with a removal packet.

29. On information and belief, Mikal asserts that the Defendant acted willfully and with malice and in reckless disregard of her rights and welfare.

30. Defendant, through its subordinates, retaliated against Mikal for engaging in the EEO process and subjected Mikal to a hostile work environment in violation of Title VII and the Rehabilitation Act of 1973.

## V. CAUSES OF ACTION

31. Mikal incorporates the preceding and proceeding paragraphs into this paragraph by reference. The above-described facts constitute retaliation and discrimination based on race, color and disability in violation of Title VII and Rehabilitation Act of 1973. Defendant's reasons for terminating Mikal, denying her appeals, not providing Mikal reasonable accommodations, subjecting Mikal to a hostile work environment, denying Mikal career enhancing opportunities, denying Mikal a performance award, denying Mikal's leave requests, improperly disclosing Mikal's medical information, assigning Mikal additional adjudicative duties, suspending Mikal, charging Mikal with AWOL, giving Mikal a written counseling, deliberately isolating Mikal physically, emotionally, and mentally were motivated by and/or because of her race, color and disabilities, as well as being in retaliation for Mikal's opposition to such unlawful conduct.

## VI. DAMAGES

32. Mikal's claims of discrimination and retaliation are within the jurisdictional limits of this Court.

33. Mikal incorporates the preceding and proceeding paragraphs into this paragraph by reference. The conduct described above proximately caused actual and compensatory damage to Mikal, including but not limited to lost wages, benefits, humiliation and emotional distress, physical pain and suffering, medical services and medications in the past and in the future, damage to her personal reputation, damage to her professional reputation, damage to her earning capacity, and damage to her enjoyment of life.

34. Mikal is entitled to recover reasonable attorney fees and costs pursuant to EAJA 28 U.S.C. § 2412(b), Title VII and Rehabilitation Act of 1973.

## PRAYER FOR RELIEF

35. WHEREFORE, Mikal requests that this Honorable Court advance this case on the docket, order a jury trial at the earliest practical date, and grant Mikal the following relief pursuant to all federal law and statutes cited in the preceding and proceeding paragraphs, including, but not limited to the following:

   (a) Grant. Mikal a permanent injunction enjoining Defendant, it's agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Mikal's rights;

   (b) Issue an order requiring Defendant to promote Mikal to a higher position to which she is entitled by virtue of her responsibilities and qualifications or award front pay if such promotion is not feasible;

   (c) Issue an order awarding Mikal back pay, fringe benefits, and any other appropriate relief necessary to make Mikal whole and compensate her for

the civil rights violations described above;

(d)   Award Mikal compensatory/mental anguish damages;

(e)   Award Mikal prejudgment and post-judgment interest as allowed by law;

(f)   Award Mikal attorney fees and costs of this suit;

(g)   Award Mikal such other legal and equitable relief as this Court deems just and proper;

(h)   Award Mikal damages requested in part VI of this Complaint;

(i)   Award Mikal all other relief, in law and equity, to which Mikal may be entitled.

Dated this 22nd day of December 2022.            Respectfully submitted,

/S/ Ashok Bail

_____

Ashok Bail
Attorney for Plaintiff
3120 Southwest Freeway, Suite 450
Houston, TX 77098
Tel. No. (832) 216-6693
Fax. No. (832) 263-0616
E-mail: ashok@baillawfirm.com
Attorney for Plaintiff
The Bail Law Firm, PLLC

## **CERTIFICATE OF SERVICE**

      On December 22 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                              *s/Ashok Bail*_____
                                              Ashok Bail